IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ANTHONY JAEGAL, SR.; MARK ANTHONY JAEGAL, JR., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants.<br>_____/ | No. C 09-0242 CW<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION TO AMEND CLASS CERTIFICATION ORDER (Docket No. 57) |

    On January 22, 2010, the Court certified the following class, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) for injunctive and declaratory relief and (b)(3) for damages:

> All pre-arraignment detainees who are or will be held in Defendants' custody and who, because of such detention, will be strip searched pursuant to Alameda County Sheriff's Department custom, policy or procedure without a reasonable suspicion based on specific and articulable facts that the detainee possessed a weapon or contraband that would be found as a result of the strip search.

    In doing so, the Court noted that the class definition was subject to revision and decertification, if necessary. Defendants move to amend the class definition. Docket No. 57. Plaintiffs oppose the motion in part. The motion was taken under submission on the papers. Having considered all of the parties' arguments, the Court grants Defendants' motion in part.

DISCUSSION

Defendants move to amend the class definition to clarify that (1) the term "strip search," for purposes of defining the class in this action, is limited to the search of a person who is completely unclothed, or whose genitals or female breasts are exposed to be viewed by the person or persons conducting the search, and (2) the class is limited to those who experienced such searches while in the intake/booking process.[1]

Plaintiffs acknowledge that Bull v. City and County of San Francisco, 595 F.3d 964, 982 (9th Cir. 2010), found facially reasonable under the Fourth Amendment a jail policy that required unclothed visual inspection of all arrestees classified for custodial housing in the general population, notwithstanding the lack of individualized reasonable suspicion as to the individuals searched. Accordingly, Plaintiffs agree to limit the class to those who were strip searched, as Plaintiffs define that term,

---

[1] Defendants' original proposed amended class definition states,

All pre-arraignment detainees who are or will be held in Defendants' custody, but will not be transferred to the general inmate population, and who, because of such detention, are strip searched in a manner which requires that they remove all their clothing and expose their genitals, buttocks and, in the case of female detainees, breasts to be viewed by the person or persons conducting the search, pursuant to Alameda County Sheriff's Department custom, policy or procedure without reasonable suspicion based on specific and articulable facts that the detainee possessed a weapon or contraband that would be found as a result of the strip search. To qualify the [sic] as a member of the class, the detainee must have undergone the strip search, as described above, as part of the jail's routine booking process and while in the booking/intake area of the jail, and must not have been transferred to the general jail population.

2

pursuant to the challenged policy or custom, during the booking process.  However, Plaintiffs take issue with Defendants' original proposed amended class definition because the last sentence excludes those who were strip searched under the policy, but were later transferred to the general jail population.  In their reply, Defendants agree that their proposed wording was unduly narrow in this respect and propose a sentence that states, "To qualify as a member of the class, the detainee must have undergone the strip search, in the manner described above, as part of the jail's routine booking process and while in the booking/intake area of the jail."  An amendment to limit the class to those who were strip searched during the booking process is appropriate because the prior class definition, approved before Bull, did not distinguish between those detainees strip searched during the booking process, and those strip searched as part of their transfer to housing with the general inmate population.

On the other hand, Plaintiffs oppose limiting the class to those who were searched while naked, thus excluding those who were searched while wearing undershorts.  The parties dispute whether the definition of a strip search necessarily excludes searches of those detainees wearing undershorts.

Plaintiffs contend that it is well established in the Ninth Circuit that a strip search may occur while the person subject to the search continues to wear underwear.  Plaintiffs cite the Supreme Court's reasoning in Safford Unified School District #1 v. Redding, 129 S. Ct. 2633 (2009), and the Ninth Circuit's decisions in Byrd v. Maricopa County Sheriff's Department, 629 F.3d 1135, 1138, 1145 (9th Cir. 2011) and Edgerly v. City and County of San

3

Francisco, 599 F.3d 946, 958 (9th Cir. 2010). However, in these cases the searched individuals were required to expose their genitalia or private parts. In Safford, the plaintiff "pulled out" her underwear, such that the private areas of her body were exposed to the persons conducting the search. 129 S. Ct. at 2641.[2] In Edgerly, the searching officers opened the plaintiff's underwear to inspect his private areas visually. 599 F.3d at 958.[3] Finally, in Byrd, the searched individual was allowed to keep his underwear on, but was subjected to a tactile inspection by a cadet who "touched [the plaintiff's] inner and outer thighs, buttocks, and genital area with her latex-gloved hand through very thin boxer shorts," "ran her hand up to separate the cheeks while

---

[2] In Safford the plaintiff was directed "to remove her clothes down to her underwear, and then 'pull out' her bra and the elastic band on her underpants." Id. The Court stated that the "exact label" for the intrusion was "not important, though strip search is a fair way to speak of it." Id. The Court explained,

> The very fact of [the plaintiff's] pulling her underwear away from her body in the presence of the two officials who were able to see her necessarily exposed her breasts and pelvic area to some degree, and both subjective and reasonable societal expectations of personal privacy support the treatment of such a search as categorically distinct, requiring distinct elements of justification . . . for going beyond a search of outer clothing and belongings.

Id.

[3] In Edgerly, the evidence indicated that the searching official required the plaintiff to pull his pants down to his ankles, and then "placed his finger within [the plaintiff's] boxers and 'kind of just looked around.'" Id. (quoting the plaintiff's testimony). The court found a reasonable inference that the official "visually inspected [the plaintiff's] buttocks or genitalia, which would amount to a strip search" under Ninth Circuit precedent. Id.

4

applying slight pressure, to search for contraband inside his anus," and "moved his penis and scrotum in the process of conducting the search."  629 F.3d at 1137, 1142.

Plaintiffs have not provided any indication that the officials in the present action subjected Mr. Jaegel, Jr., who remained clothed in his underwear, to a tactile search of his genitalia or buttocks, that they pulled out Mr. Jaegel, Jr.'s underwear to allow a visual inspection of such areas, or that they required him to move his underwear, exposing those areas to the searching officials.  There is no indication that Defendants conducted anything other than a visual inspection of Mr. Jaegel, Jr. after he was asked to strip to his undershorts.  Amendment to the class definition is warranted to clarify the type of search that a class member must have experienced.

Plaintiffs propose in their opposition brief to modify the class definition to clarify that it includes individuals who were strip searched in the past.  Specifically, Plaintiffs propose that the first sentence of the class definition state, in relevant part, "All pre-arraignment detainees who are, will be or have been processed (booked) into Defendants' custody and who, because of such booking processing, have been or will be strip searched pursuant to Alameda County Sheriff's Department custom, policy or procedure . . . ."  Defendants do not oppose this modification, but request that it contain a limiting date of January 20, 2007, based on the two year statute of limitations for the claim.  Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007) (stating that the forum state's statute of limitations for personal injury actions governs § 1983 claims and California Code of Civil

5

Procedure section 335.1 establishes a two-year limitations period for personal injury actions).

Defendants' motion to amend the class definition is granted in part. The Court amends the class definition to state,

> All pre-arraignment detainees who have been, after January 20, 2007, are, or will be held in Defendants' custody and who, because of such detention, were, after January 20, 2007, or will be, strip searched in a manner requiring that they remove all of their clothing or expose their genitals, buttocks or, in the case of female detainees, breasts, for visual inspection by the person(s) conducting the search, pursuant to Alameda County Sheriff's Department custom, policy or procedure without a reasonable suspicion based on specific and articulable facts that the detainee possessed a weapon or contraband that would be found as a result of the strip search. To qualify as a member of the class, the detainee must have undergone or undergo the strip search, as described above, as part of the jail's routine booking process and while in the booking/intake area of the jail.

As set forth in this Court's June 3, 2011 order, the parties shall appear for a case management conference on January 26, 2011.

IT IS SO ORDERED.

Dated: 1/17/2012

CLAUDIA WILKEN
United States District Judge